IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>Aearo Technologies LLC, *et al.*,[1]<br><br>             Debtors.<br><br>―――――――――――――――――<br><br>3M OCCUPATIONAL SAFETY LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO LLC, AND AEARO TECHNOLOGIES LLC,<br><br>             Plaintiffs,<br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>             Defendants. | Chapter 11<br><br>Case No. 22-02890-JJG-11<br><br><br><br><br><br><br><br><br><br>Adv. Pro. No. 22-50059 |

**DECLARATION OF JEFFREY S. STEIN
IN SUPPORT OF DEBTORS' MOTION FOR
<u>DECLARATORY AND INJUNCTIVE RELIEF</u>**

I, Jeffrey S. Stein, pursuant to 28 U.S.C. § 1746, state as follows:

1. I am a member of the Board of Directors of each of the Debtors in the above-captioned action. I respectfully submit this Declaration in Support of the *Debtors' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' First Day Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, filed contemporaneously herewith. The location of the Debtors' service address for the purposes of these chapter 11 cases is: 7911 Zionsville Road, Indianapolis, Indiana 46268.

*Debtor; and (III) Granting a Temporary Restraining Order Pending an Order on the Preliminary Injunction* (the "**Motion**").[2]

2.      In addition to my role as a member of the Debtors' board, I am the Managing Partner of Stein Advisors LLC, a financial advisory firm that provides consulting services to companies and institutional investors. In this role, I have been engaged as a director and/or officer to support various companies experiencing significant challenges, including financial restructuring, increased regulatory oversight, and emergence from bankruptcy.

3.      Prior to founding Stein Advisors LLC in 2010, I co-founded and served as Principal of Durham Asset Management LLC, a global event-driven distressed debt and special situations equity asset management firm, from January 2003 through December 2009. In that capacity, I was responsible for identifying, evaluating, and managing investments for various investment portfolios. From July 1997 to December 2002, I served as Co-Director of Research at The Delaware Bay Company, Inc., a boutique research and investment banking firm focused on the distressed debt and special situations equity asset classes. From September 1991 to August 1995, I was an Associate and Assistant Vice President at Shearson Lehman Brothers in the Capital Preservation and Restructuring Group.

4.      I hold a Bachelor of Arts degree in Economics from Brandeis University and a Master of Business Administration degree with honors in Finance and Accounting from New York University.

5.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) information supplied to me by the Debtors' management,

---

[2]   Capitalized terms used in this Declaration and not otherwise defined shall have the meanings ascribed to them in the Motion.

professionals, or employees; (c) my review of relevant documents; and/or (d) my opinion based upon my experience and knowledge of the Debtors' assets, liabilities, financial condition, and litigation strategies. I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

### Appointment of Disinterested Directors and Strategic Review

6. I assumed my role as a member of the Debtors' Boards on June 13, 2022. In my capacity as a board member, I have become familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

7. The corporate structure of the Debtors, which is described in greater detail in the *Declaration of John R. Castellano in Support of First Day Pleadings* filed in the chapter 11 cases (the "**First Day Declaration**"), consists of seven entities that are each indirect subsidiaries of 3M, although each has its own board of directors (the "**Boards**"). In June 2022, all seven Debtors appointed two disinterested directors—Roger Meltzer and me—to the Boards. Prior to my appointment, I did not have any affiliation with the Debtors or 3M. As disinterested directors, Mr. Meltzer and I were delegated broad decision-making authority with respect to matters that may constitute a conflict between the Debtors and 3M.

8. Debtors and 3M also retained external consultants and legal counsel. For conflicts counsel, the Debtors retained McDonald Hopkins LLC and 3M retained White & Case LLP. Prior to their engagement, McDonald Hopkins did not have any affiliation with the Debtors or 3M. The Debtors also engaged Kirkland & Ellis LLP and Ice Miller LLP as legal counsel to, among other things, advise the Boards as to the potential tools to address the Debtors' tort liabilities, including through a chapter 11 process.

9. After thorough review and extensive negotiations, the Debtors established a framework for the future. As part of that plan, the Debtors commenced chapter 11 proceedings in order to efficiently and equitably resolve all Combat Arms Claims, including those asserted in the Pending Actions, and the Debtors' other liabilities.

**Negotiation and Execution of the Funding and Indemnification Agreement**

10. In the months prior to commencing these chapter 11 cases, the Debtors took proactive steps to determine if they could address their Combat Arms and other liabilities through chapter 11. One requisite step was determining if the Debtors could obtain the financing necessary to ensure that they could fund successful chapter 11 cases, including the professional fees expected to be incurred and the ultimate funding of a claims trust, while also remaining independent from 3M before and during the chapter 11 proceedings.

11. On July 25, 2022, at the direction of Roger Meltzer and myself, the Debtors entered into a funding and indemnification agreement attached as Exhibit B to the First Day Declaration (the "**Funding Agreement**").

12. I approved the Debtors' entry into the Funding Agreement. That Funding Agreement will finance the Debtors' operations and capital needs, along with the chapter 11 cases (including a claims trust to address the Combat Arms liabilities) on an uncapped basis. The Debtors also will never have to repay any amounts advanced by 3M. Aside from 3M, no third-party would ever provide a comparable facility on the same advantageous terms to the Debtors. The Funding Agreement is an enormous contribution by 3M that is integral to the Debtors' successful restructuring and the efficient, equitable resolution of all Combat Arms Claims. 3M agreed to the Funding Agreement in exchange for the Debtors' commitment to indemnify 3M for the Combat Arms liabilities.

13. The Funding Agreement was the product of several rounds of good faith and arms-length negotiations, during which 3M was represented by White & Case LLP, and the Debtors were represented by McDonald Hopkins LLC. Working closely with (and advised by) McDonald Hopkins, I was personally involved in the analysis and negotiation of the Funding Agreement. I believe the Funding Agreement to be in the Debtors' best interests, and I understand it to be critical to achieving a successful chapter 11 restructuring.

14. The key terms of the Funding Agreement[3] include the following:

- ***Consideration from 3M to the Debtors***. 3M agrees to provide cash upfront to fund the Debtors' operations and their chapter 11 cases in the amount of $5.0 million, which was funded on July 25, 2022 (the "Initial Payment"). 3M agrees further to fund the Debtors' operations, chapter 11 cases, Earplug Liabilities and Respirator Liabilities, as well as any other claims allowed under a confirmed chapter 11 plan.

- ***Consideration from the Debtors to 3M***. The Debtors agree to indemnify 3M and its Payor Affiliates for all Earplug Liabilities and Respirator Liabilities.

- ***Continuation of Existing Shared Services Arrangement***. 3M will continue, and will cause its Payor Affiliates to continue, to provide the Shared Services to the Debtors. The Debtors will not be required to make payments to 3M on account of the Shared Services during the pendency of the chapter 11 cases.

- ***Funding***. In addition to the Initial Payment, 3M commits to fund at least $1.24 billion under the terms of the Funding Agreement, which funding commitment includes:
    - $240.0 million to administer the chapter 11 cases; and
    - $1.0 billion to fund one or more Trusts.

  This commitment is not a cap on 3M's funding obligations. Through the Funding Agreement, 3M has committed to fund *any* Permitted Funding Use, even if it exceeds the foregoing commitments.

- ***Permitted Funding Uses***. The following obligations are considered Permitted Funding Uses under the Funding Agreement to the extent the Debtors' available cash is insufficient to satisfy such obligations:

---

[3] Capitalized terms used in this summary but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Funding Agreement. To the extent that there is any inconsistency between this summary and the Funding Agreement, the Funding Agreement shall control.

5

- Operating Costs: Operating costs and costs associated with the administration of the chapter 11 cases;

- Liability/Defense Costs: The following amounts: (a) outside of the chapter 11 cases, payments made on account of the Earplug Liabilities and Respirator Liabilities; (b) following the commencement of the chapter 11 cases, funding of one or more Trusts; (c) any Liability for any other Causes of Action allowed or deemed allowed under a Plan, other than the Earplug Liabilities or the Respirator Liabilities; and (d) any ancillary/defense costs related to the foregoing;

- Liability owed to 3M: Any liabilities of the Debtors owed to 3M or any Payor Affiliate;

- Enforcement Costs: Costs incurred by the Debtors in enforcing the Funding Agreement; and

- Indemnification Costs: Costs incurred to pay any indemnification or other obligations owing to any managers, directors, or officers of a Debtor.

- ***No Requirement of Repayment***. The Debtors have no requirement to return or repay any Payment made by 3M under the Funding Agreement (excluding the Debtors' indemnification obligations under the Funding Agreement).

- ***Conditions to Funding***. Conditions to funding include the following: (a) that there is no continuing breach by the Debtors of their covenants under the Funding Agreement, including their covenants to (i) only request and use payments for Permitted Funding Uses, (ii) honor their indemnification obligations to 3M and its Payor Affiliates in all material respects, subject to the automatic stay, and (iii) provide a Budget every two weeks; and (b) that the Debtors' representations and warranties remain true in all material respects.

15. The Funding Agreement therefore provides the Debtors with an ability to advance these chapter 11 cases through claims estimation, plan confirmation, and emergence, and provides a source of recovery for any Combat Arms Claims determined to be entitled to compensation.

### The Debtors' Need for the Requested Declaratory and Injunctive Relief

16. The relief sought in the adversary proceeding is critical to the Debtors' ability to achieve the purpose of their chapter 11 cases. Application of the automatic stay to Combat Arms Claims asserted against 3M, and an order preliminarily enjoining the continuation of Pending

Actions against 3M, will forestall the expenditure of tens (and perhaps hundreds) of millions in litigation costs fighting claims in the MDL and other courts nationwide, dollars that otherwise could be reserved to fund a settlement with the plaintiffs and a trust under the reorganization plan.

17. I believe that forcing 3M (and potentially the Debtors) to continue to litigate (with the attendant costs and distraction) will impair the Debtors' ability to successfully negotiate a settlement of the Combat Arm Claims. I further believe that a stay of the litigation against the Debtors and 3M would facilitate an equitable and efficient resolution of the Combat Arms Claims through the bankruptcy's estimation and claims process. Based on my experience, such an orderly process completely aligns with the tools and goals of the chapter 11 process.

18. With the Funding Agreement, and upon an application of the automatic stay to 3M as requested in the Motion, the Debtors believe they will: (a) be in the best position to maximize available funds for the greatest and most equitable distribution to all creditors, including holders of Combat Arms Claims, under a consensual chapter 11 plan; and (b) have sufficient assets, including cash available under the Funding Agreement, (i) to fund a claims trust that will be governed by procedures that efficiently and fairly review claims and compensate Combat Arms tort claimants, and (ii) otherwise satisfy the Bankruptcy Code requirements.

19. In this regard, it is important to note that while the Funding Agreement is uncapped, any confirmable plan in these cases will require a mutually agreeable settlement of claims between and amongst 3M, the Debtors, and holders of Combat Arms Claims. Based on this, and also reinforced by my experience through the negotiation of the Funding Agreement with 3M, I strongly believe that any go-forward amounts spent by 3M litigating the Combat Arms Claims will hinder a successful resolution of these chapter 11 cases and potentially diminish the recovery for the Debtors' stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 26, 2022

_____
Jeffrey S. Stein