# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | Case No. 22-02890-JJG-11 |
| Debtors. | Jointly Administered |
| 3M OCCUPATIONAL SAFETY LLC, *et al.*, | Adv. Proc. No. 22-50059 |
| Plaintiffs, | |
| vs. | |
| THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, *et al.*, | |
| Defendants. | |

**OBJECTION OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC
TO DEBTORS' REQUEST FOR A TEMPORARY RESTRAINING ORDER**

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf approximately 45,000 tort claimants, objects to the portion of the *Debtor's Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor; and (III) Granting a Temporary Restraining Order Pending an Order on the Preliminary Injunction* [Adv. Docket No. 2] (the "Injunction Motion") that seeks a temporary restraining order ("TRO").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' First Day Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Bankr. Docket No. 7]. The location of the Debtors' service address for the purposes of these chapter 11 cases is 7911 Zionsville Road, Indianapolis, Indiana 46268.

[2] Consistent with the *Order on Debtors' Ex Parte Motion to Shorten Notice and Set an Expedited Hearing on the Debtors' Request for a Temporary Restraining Order* [Adv. Docket No. 9], the balance of the relief requested in the Injunction Motion will be heard at a future date and subject to a separate objection deadline.

1

## INTRODUCTION

1.      This case sits at the intersection of two alarming trends in bankruptcy. First, it is merely the latest example of a wealthy, solvent non-debtor – here, 3M Company ("3M") – seeking to avail itself of all the benefits of bankruptcy without subjecting itself to any of the burdens of bankruptcy. Second, it is perhaps the most abusive example to date of a defendant taking full advantage of the case management tools afforded by the Judicial Code and Federal Rules of Civil Procedure but then deciding that the orderly, well-managed litigation process it secured is not delivering the verdicts it hoped for – and thus scurrying into bankruptcy court.

2.      This is not a proper foundation for extraordinary equitable relief – and certainly not for emergency relief, on essentially no notice. The issues implicated by the TRO request go to the heart of the bankruptcy process, including which entities are entitled to this Court's protection and whether a litigant's dissatisfaction with the verdicts being returned in an existing forum is a sufficient basis to shift ongoing proceedings to the bankruptcy forum. These issues should only be resolved on a full record, after appropriate discovery, briefing, and argument. There is no basis to short-circuit that process merely because 3M would like a quick decision rendered on an emergency basis that will stack the deck in its favor before injured veterans and servicemembers have any opportunity to take discovery or be meaningfully heard.

3.      If 3M truly needed the benefit of the automatic stay, it could have filed for bankruptcy itself. Doing so would have immediately halted all litigation without any need for a TRO. But 3M instead is trying to game the system by saddling a subsidiary with indemnification obligations, bankrupting that subsidiary, and then arguing that the indemnification obligations entitle 3M to extraordinary injunctive relief. The Court should not reward this gambit by granting emergency relief, but instead should set the matter for full and proper consideration, with appropriate discovery, briefing, and argument.

## BACKGROUND

4. In late 2018, the U.S. government settled a *qui tam* lawsuit against 3M Company ("3M") and its subsidiary, 3M Innovative Properties, for those companies' fraud in knowingly selling a defective and dangerous earplug – the Combat Arms Earplugs v2 ("CAEv2") – to the military for more than 15 years. The debtors in these jointly administered bankruptcy cases (the "Debtors" and collectively, "Aearo") were not parties to that lawsuit because, after 3M acquired Aearo in 2008, 3M assumed all of Aearo's liabilities and apparently rendered Aearo little more than a shell that does not even pay its own employees' wages. *Cf.* Wages Mot. [Bankr. Docket No. 20] ¶ 12 ("Historically, non-Debtor 3M has paid for the majority of obligations arising under the Employees' Compensation and Benefits directly to the Debtors' Employees.").

5. When thousands of affected veterans thereafter filed lawsuits for injuries suffered from using the CAEv2 in training, on base, and in combat in Afghanistan and Iraq, 3M never once argued that it was anything other than directly and independently liable for those injuries. Nor did 3M attempt to shift the blame to Aearo. Instead, 3M and the plaintiffs engaged in years of discovery and tried 16 bellwether cases for 19 plaintiffs to jury verdict – resulting in over $300 million in damages for injured veterans – without a single suggestion that Aearo, rather than 3M, held the liabilities for CAEv2-related injuries.

6. But now Aearo is back as an allegedly separate entity – for use as a vehicle to ferry 3M's liabilities into chapter 11 without 3M itself filing for relief. Just one day before these bankruptcy petitions were filed, 3M and Aearo entered into a "Funding and Indemnification Agreement" by which Aearo agreed to indemnify 3M for all of its CAEv2-related liabilities. And that newly-confected indemnification obligation is now the basis for the request that this Court grant extraordinary equitable relief to non-debtor 3M. *See, e.g.*, Injunction Mot. at 5 ("The Debtors have agreed to indemnify 3M and its non-debtor affiliates for the Pending Actions.

3

Accordingly, the Debtors' estates are placed directly at risk by the immense and accelerating cost of litigating the Pending Actions, as well as any resulting adverse judgments against 3M or its non-debtor affiliates.").

7. The impetus for resurrecting Aearo as a putatively independent entity is 3M's dissatisfaction with the verdicts that juries render when they hear the evidence against 3M. The story set out in the Injunction Motion and accompanying "Informational Brief"[3] is that the coordinated MDL process that 3M has been participating in for years was actually "doomed … from the outset" (Informational Brief Point III) and is hopelessly "broken beyond repair" (*id*. Point IV). The Informational Brief describes the MDL as an utter "failure," *id*. at 1, that has "spiraled out of control," *id*. at 4, and accuses the judge presiding over the MDL of having "abandoned" proper vetting, *id*. at 7, and "gutted defenses and barred key evidence," *id*. at 43, among numerous other alleged failings.

8. Rather than pursuing appellate relief for these perceived injustices, 3M has decided it would prefer to opt out of the civil justice system entirely: "At this point, the … tort claims morass simply cannot be sorted out in the MDL or in the traditional tort system." *Id*. at 52. And it seeks this Court's aid in this endeavor. Had 3M itself filed for bankruptcy, no TRO would be necessary: the automatic stay of Bankruptcy Code section 362(a) would automatically apply. But 3M elected not to subject itself to this Court's jurisdiction, and instead is attempting to use a subsidiary's bankruptcy (and a suspicious, eve-of-bankruptcy contract) to rid itself of its own independent liability to hundreds of thousands of veterans and servicemembers.

---

[3] Informational Brief of Aearo Technologies LLC [Bankr. Docket No. 12]. AWKO will not here attempt to catalog all the inaccuracies in this 62-page advocacy piece, but to the extent the Court would benefit from a balanced and neutral view of the underlying facts, the United States District Judge who has been presiding over coordinated multidistrict litigation ("MDL") proceedings for years has written numerous opinions that may be of assistance, including *In re 3M Combat Arms Earplug Products Liability Litigation*, 474 F. Supp. 3d 1231 (N.D. Fla. 2020).

4

# ARGUMENT

9. Preliminary injunctive relief – especially in the form of a temporary restraining order entered on essentially no notice – is "an extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). The party seeking such relief must make a "clear showing" of entitlement, *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), which is governed by four elements:

> A [party] seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

*Id*. at 20. In undertaking this analysis, "irreparable harm is a threshold requirement for granting injunctive relief," and thus is generally analyzed first. *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th 2022).

10. At this stage of this just-filed bankruptcy case, the most glaring defect in the Debtors' request for a TRO is the absence of any irreparable harm if relief is not granted. There is nothing imminent or potentially cataclysmic on the immediate horizon. Indeed, of the two declarations tendered in support of the Injunction Motion, one indicates that this bankruptcy filing has been in the works for "months," Stein Decl. [Adv. Docket No. 3] at ¶ 10, and the other includes a chart of upcoming litigation deadlines on which the earliest entry ("Responses to written discovery requests due") is August 9, 2022, *see* Horowitz Decl. [Adv. Docket No. 4] at ¶ 28. No actual trials are scheduled to commence. At most, the parties will continue with ongoing depositions and discovery, which – in the context of an MDL that has been ongoing since 2019 – cannot remotely constitute "irreparable harm."

11. The absence of any imminent irreparable harm is reason enough to deny the TRO and set the remainder of the relief requested in the Injunction Motion for full and appropriate

5

consideration in connection with discovery and a briefing schedule. Among other things, the parties against whom emergency injunctive relief is being sought should have a full and fair opportunity for discovery regarding the Debtors' apparent claim that they alone are now responsible for 3M's CAEv2-related liability. This is an about-face from the litigation posture in the MDL, where 3M litigated for years without ever asserting that its liability is somehow siloed in a particular subsidiary. *See* Informational Br. at 54 (recounting that "throughout the MDL proceedings and trials, Aearo and 3M were together referred to as 'Defendants,' including on jury verdict forms assessing liability and damages" – all without objection by Defendants).

12. Indeed, even the Debtors' filings in this Court are opaque regarding the precise relationship between 3M, Aearo, and the CAEv2, with statements such as:

> In 2008, 3M acquired Aearo, and in 2010, Aearo's earplug sales business was transferred upstream to 3M. The companies continued producing and selling the Combat Arms until 2015.

*Id*. 53. The first of these two sentences appears to draw a distinction between 3M's acquisition of the stock of Aearo in 2008 versus some type of internal corporate transaction or perhaps accounting maneuver ("upstreaming") in 2010. But the second of the two sentences appears to indicate that both 3M and Aearo jointly (*i.e.*, the "companies" plural) "continued producing and selling" the product for years thereafter. With this bankruptcy filing having been in the works for (at least) months, the opacity on this point seems deliberate.

13. Full and fair discovery is also necessary with respect to the Injunction Motion's claims of shared insurance between 3M and Aearo. The Injunction Motion includes at least 50 references to "insurance," "insurers," "co-insureds," and the like, and makes "shared insurance" a centerpiece of its argument. *See, e.g.*, Injunction Mot. at 37 (asserting that "3M's ability to make a claim for coverage under the shared policies alone justifies an injunction"). But then there is a passing reference (in a subordinate clause) to the fact that "none of the insurers has yet

6

acknowledged its coverage obligations ….." *Id*. at 22.  No relief can or should be granted on such a sparse "record."

14.  In addition to the Debtors' failure to even allege – let alone prove – any irreparable harm that can only be prevented by the issuance of emergency injunctive relief on essentially no notice, the TRO request and these chapter 11 cases generally raise grave questions of bankruptcy practice and policy that can and should only be decided on a full and appropriate record, after full and appropriate discovery, briefing, and argument.  These questions include the extent to which an indisputably solvent non-debtor such as 3M can manipulate the bankruptcy process to secure relief without subjecting itself to the strictures of the Bankruptcy Code; whether 3M's independent CAEv2-related liability can or should be addressed in these cases; and how the existence of a longstanding and well-managed coordinated litigation process ought to factor into the extraordinary exit that 3M seeks to make from the civil justice system.

15.  These questions are far too important to be briefed overnight and argued at a first-day hearing.  Indeed, the Court should be especially leery of the Debtors' and 3M's attempts to impose such an artificially truncated timeline by design.  This bankruptcy has apparently been in the works for quite some time, and the lawyers who planned it took all the time they needed to develop and hone their first day papers.  They obviously did not need to include a TRO request.  Instead, they could have sought preliminary injunctive relief on an expedited but nonetheless sufficient schedule that would afford the Court and opposing counsel sufficient time to evaluate and responsibly address the important issues presented.  Their failure to take a reasonable and appropriate path bespeaks either gamesmanship or a lack of confidence in the merits of their position.

## CONCLUSION

16.     There is no basis for entering a temporary restraining order.  No immediate irreparable harm has even been alleged, let alone proved.  The sole "harm" is the continuation of orderly discovery in a long-running, well-managed coordinated litigation overseen by another federal judge.  The relief sought in the Injunction Motion is immensely consequential to hundreds of thousands of injured veterans and servicemembers, and far too important to resolve without full and fair discovery, briefing, and argument.  The Court should deny the TRO and set the Injunction Motion for hearing on an appropriate schedule.

Dated: July 26, 2022                             **KTBS LAW LLP**

                                By:    /s/ Robert J. Pfister
                                       Michael L. Tuchin (*Pro Hac Vice* Pending)
                                       Thomas E. Patterson (*Pro Hac Vice* Pending)
                                       Robert J. Pfister (IN Bar No. 23250-02)
                                       Sasha M. Gurvitz (*Pro Hac Vice* Pending)
                                       Nir Maoz (*Pro Hac Vice* Pending)
                                       1801 Century Park East, 26th Floor
                                       Los Angeles, California 90067
                                       Telephone:   (310) 407-4000
                                       Facsimile:   (310) 407-9090
                                       Email:       mtuchin@ktbslaw.com
                                                    tpatterson@ktbslaw.com
                                                    rpfister@ktbslaw.com
                                                    sgurvitz@ktbslaw.com
                                                    nmaoz@ktbslaw.com

                                       *Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*