# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) Case No. 22-02890-JJG-11 |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) |
| 3M OCCUPATIONAL SAFETY LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO LLC, AND AEARO TECHNOLOGIES LLC, | ) ) ) ) |
|  | ) Adv. Pro. No. 22-50059 |
| Plaintiff, | ) |
| v. | ) |
|  | ) |
| THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT and JOHN AND JANE DOES 1-1000, | ) ) ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## DEBTORS' SUPPLEMENTAL SUBMISSION IN ADVANCE OF THE AUGUST 15, 2022 HEARING ON THEIR MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF (I) CONFIRMING THAT THE AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS AGAINST A NON-DEBTOR; AND (II) PRELIMINARILY ENJOINING CERTAIN ACTIONS AGAINST A NON-DEBTOR

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered by the Court for each consolidated Debtor [Docket Nos. 37–42]. The location of the Debtors' service address for the purposes of these chapter 11 cases is 7911 Zionsville Road, Indianapolis, Indiana 46268.

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

SUPPLEMENTAL ARGUMENT AND ANALYSIS ..................................................................3

I.    ACTIONS IN THE MDL COURT AND BEFORE THE JPML OVER A
      TWO-WEEK PERIOD UNDERSCORE THE NEED FOR INJUNCTIVE
      RELIEF............................................................................................................................3
      A.    Within Hours Of The Petition Filings, Activities In The MDL Court And
            Before The JPML Raised Serious Threats Of Irreparable Harm. ...........................4
      B.    The Debtors Nonetheless Consensually Resolved The TRO Motion Based
            On Certain Law Firms' Assurances That There Was No Imminent Risk Of
            Harm. ...................................................................................................................5
      C.    In The 14 Days Following The First Day Hearing, Substantial Events Have
            Threatened Debtor's Reorganization Efforts And This Court's Jurisdiction.
            ............................................................................................................................7

II.   THE EVIDENCE IN THIS CASE FITS SQUARELY WITHIN THE WELL-
      ESTABLISHED LEGAL FRAMEWORK FOR STAYING OR ENJOINING
      LITIGATION AGAINST NON-DEBTORS. ...................................................................12
      A.    The Section 105 Preliminary Injunction And Section 362 Automatic Stay
            Factors Overlap In Many Respects As Applied To Non-Debtors. .......................12
      B.    The Evidence Will Show That The Court Can And Should Grant Relief
            Under Section 105 And Section 362...................................................................15

CONCLUSION ................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*A.H. Robbins Co., Inc. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ...............................................12

*Bennett v. Medtronic, Inc.*,
285 F.3d 801 (9th Cir. 2002) ................................................4

*Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't Operating
Co.)*,
561 B.R. 441 (Bankr. N.D. Ill. 2016) ...............................................4, 14

*Colonial Penn Ins. Co. v. Coil*,
887 F.2d 1236 (4th Cir. 1989) ................................................4

*Edwards v. McElliotts Trucking*,
LLC, 2017 WL 5559921 (S.D. W. Va. Nov. 17, 2017)...........................14

*Emoral v. Diacetyl (In re Emoral Inc.)*,
740 F.3d 875 (3d Cir. 2014)................................................10

*Fisher v. Apostolou*,
155 F.3d 876 (7th Cir. 1998) ................................................4

*Griffin v. City of Chicago*,
497 F. Supp. 3d 307 (N.D. Ill. 2020) ................................................4

*In re Klarchek*,
508 B.R. 386 (Bankr. N.D. Ill. 2014) ................................................12

*Kuehn v. Sage EcoEnterprises, LLC*,
2021 WL 3883118 (W.D.N.C. Aug. 30, 2021)...........................................14

*In re L&S Industries, Inc.*,
989 F.2d 929 (7th Cir. 1993) ................................................4

*In re LTL Management, LLC*,
638 B.R. 291 (Bankr. D.N.J. 2022) ................................................14

*Marrama v. Citizens Bank of Mass.*,
549 U.S. 365 (2007)................................................12

*Opaka v. I.N.S.*,
94 F.3d 392 (7th Cir. 1996) ................................................4

*In re USA Gymnastics*,
   19-50075 (Bankr. S.D. Ind. Apr. 22, 2019) ...................................................................14

*In re W.R. Grace & Co.*,
   2004 WL 954772 (Bankr. D. Del. Apr. 29, 2004) .................................................14

*Zerand–Bernal Group, Inc. v. Cox*,
   23 F.3d 159 (7th Cir. 1994) ...................................................................................12

**Statutes**

11 U.S.C. § 105(a) ...............................................................................................1, 4, 12, 13

11 U.S.C. § 362 .........................................................................................................1, 12, 13

28 U.S.C. § 1334 ............................................................................................................1, 12

28 U.S.C. § 1407 .................................................................................................................5

**Rules**

Fed. R. Bankr. P. 2002 ......................................................................................................16

Fed. R. Bankr. P. 9013-3(d) .............................................................................................16

Fed. R. Evid. 201 ................................................................................................................4

## <u>INTRODUCTION</u>

The fundamental goal of chapter 11 is to facilitate a successful reorganization of debtors while maximizing the value of their assets for interested parties.  In service of these core principles, the Bankruptcy Code gives ***this Court*** a number of tools—including exclusive jurisdiction over debtors and their assets (28 U.S.C. § 1334), the automatic stay (11 U.S.C. § 362), and broad equitable powers (11 U.S.C. § 105(a))—to protect debtors against threats to their assets and reorganization.  Unless this Court leverages these instruments at this early and critical stage of these proceedings to protect its jurisdiction, the onslaught of myriad attacks and diversions in other courts will inevitably derail these cases and impede a successful reorganization.

For the reorganization to succeed, it is essential that the Court exercise its power to bring pending litigation outside of these proceedings to a full stop so the Debtors can effectively reorganize without interference.  In aid of this—and an essential part of these bankruptcy proceedings—is what 3M has committed to do, including providing the financial wherewithal to fund the reorganization; committing to uncapped funding for the resolution of all claims; and fulfilling its obligations under the shared services agreement.  These critical roles of 3M are foundational to the restructuring.

As introduced in the Debtors' opening motion [Docket No. 2], the automatic stay and preliminary injunction are vital to protect this Court's jurisdiction and to ensure that the Debtors can successfully reorganize.  Given 3M's central role to the reorganization efforts and this Court's jurisdiction, the preliminary injunction hearing is, as the Court recognized, "the biggest issue in the case" at this point.[1]

In advance of that hearing, the Debtors submit this brief to (1) apprise the Court of

---

[1]    7/27/22 PM Hr'g Tr. (attached to this Brief as **Exhibit 1**) at 106:14-20.

significant recent events in the MDL and the JPML that jeopardize this Court's jurisdiction and spotlight the need for immediate injunctive relief; (2) explain how the Debtors' evidentiary presentation will fit squarely within the well-established laws and jurisprudence within the Seventh Circuit and elsewhere that empower and provide support to this Court to grant the Motion; and (3) reiterate their dedication to working with this Court and interested parties to negotiate and arrive at a consensual resolution.

*First*, in the span of 14 days since the Court's First Day Hearing, numerous events have reinforced the interlinked nature of the claims against the Debtors and 3M and the threat to the Debtors' reorganization efforts if actions against 3M are not enjoined. In the absence of any court-ordered constraint, there has been a sprint to the MDL court and JPML to pre-empt, influence, interfere with, and/or impair this Court's jurisdiction—all in cases involving claims inextricably intertwined with those against the Debtors. Indeed, MDL lead plaintiffs' counsel, Bryan Aylstock, did exactly what his lawyer (Robert Pfister) said he would not do. *Compare* July 27, 2022 Pfister statement to this Court (Aylstock is "not going to file anything," and was "not going to run into another court"), *with* August 11, 2022 Aylstock statement to the MDL court (I "absolutely endorse" and "join in" the motions filed by other law firms in the MDL court attempting to, among other things, enjoin 3M from taking certain actions in the Bankruptcy Court).[2] If this Court does not act to enforce its jurisdiction, these deliberative and disruptive actions (many of which violate the automatic stay) will continue.

*Second*, the Debtors agree with the Court's sentiment that the legal standards governing

---

[2]   The transcript from the August 11, 2022 MDL court hearing is not yet available. The quotes from that hearing that are referenced in this Brief are based on Debtors' counsel's good-faith recollection of what was said on the record during that hearing.

the hearing should not be in "dispute,"[3] and provide a targeted discussion of the key factors as they relate to specific issues flagged by the Court and/or other interested parties. The Debtors look forward to a full evidentiary hearing on August 15, 2022. And, consistent with the Court's request, the Debtors will be presenting "real live testimony" from several witnesses coupled with appropriate documentary evidence.[4] The mature record will show that a preliminary injunction or extension of the automatic stay is necessary and appropriate under both sections 105 and 362 of the Bankruptcy Code and is consistent with well-established precedent in the Seventh Circuit and elsewhere.

*Third*, the Debtors reiterate their commitment to seeking an expeditious and fair resolution of these chapter 11 cases. To this end, the Debtors look forward to meeting and discussing a collaborative path forward. But this path forward simply cannot succeed without measures that shut down the disruptive ancillary litigation against 3M and brings all parties to the negotiating table.

## SUPPLEMENTAL ARGUMENT AND ANALYSIS

## I.   ACTIONS IN THE MDL COURT AND BEFORE THE JPML OVER A TWO-WEEK PERIOD UNDERSCORE THE NEED FOR INJUNCTIVE RELIEF.

1.   On July 27, 2022, this Court heard the Debtors' Motion for a temporary restraining order enjoining certain litigation as to non-debtor 3M Company to avoid irreparable harm until the Court had an opportunity to hear and rule on the Debtors' request for a preliminary injunction. Although the Court need not find irreparable harm to enter a preliminary injunction under Section 105[5] (as opposed to a TRO), the events that have transpired before and in the 14 days since that

---

[3]   Ex. 1 at 108:17-22.

[4]   Ex. 1 at 108:2-4.

[5]   *See Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) ("[A] bankruptcy court can enjoin proceedings in other
(Continued)

TRO hearing confirm that a stay or injunctive relief is vital to this Court's mission, which is to protect its jurisdiction and to facilitate a successful reorganization.

**A.      Within Hours Of The Petition Filings, Activities In The MDL Court And Before The JPML Raised Serious Threats Of Irreparable Harm.**

2.      <u>July 26, 2022</u>. On July 26, the Petition Date, the Debtors commenced the above captioned chapter 11 cases (the "<u>Bankruptcy Cases</u>") beginning at 6:00 am,[6] and also initiated an adversary proceeding with this Court seeking, among other things, an interim temporary restraining order to bridge the time between the Petition Date and the preliminary injunction hearing.  (22-ap-50059) (the "<u>Adversary Proceeding</u>").

3.      On that same day at 1:55 pm, the MDL court *sua sponte* issued a show cause order regarding cancellation of certain depositions after the bankruptcy filing and setting a hearing 9:30 am on July 27, 2022.[7]  After learning that this Court had set its First Day Hearing to begin at the same time, the MDL court accelerated its show-cause hearing to begin an hour earlier.

4.      At 6:15 pm—12 hours after the Debtors filed their Petitions—Keller Postman filed a notice of potential tag-along action before the JPML under 28 U.S.C. § 1407, suggesting that

---

courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm.'" (quoting *In re L&S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir. 1993)); *Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't Operating Co.)*, 561 B.R. 441, 450 (Bankr. N.D. Ill. 2016) ("To obtain an injunction under section 105(a) . . . . [t]he debtor need not show irreparable harm or an inadequate remedy at law.").

6      All references to times in this brief have been adjusted to prevailing eastern time.

7      *See In re 3M Combat Arms* MDL Dkt. 3334, attached to this Brief as **Exhibit 2**. This Court may take judicial notice of the JPML and MDL pleadings and orders cited herein, which are not offered for the truth of their content. *See* Fed. R. Evid. 201; *Opaka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."); *see, e.g., Griffin v. City of Chicago*, 497 F. Supp. 3d 307, 309 n.2 (N.D. Ill. 2020) ("Relevant here, the Court has taken judicial notice of filings and hearing transcripts from the Livingston litigation."); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (taking judicial notice of the pleadings filed in a related action between the same parties in a Tennessee state court).

these entire chapter 11 cases should be transferred to the MDL court.[8]  During the First Day

Hearing, Keller Postman made no bones about the goal of its JPML transfer requests, which was

to deprive this Court of jurisdiction over the Debtors' chapter 11 cases by "sending this proceeding

to a different tribunal"—*i.e.*, the MDL court.[9]  As explained in the Debtors' August 1, 2022 motion

to enforce, this action violated the automatic stay.[10]

     5.    <u>July 27, 2022</u>:   On July 27, 2022 at 8:30 am, the MDL court held a show cause

hearing regarding deposition cancellations.  At 9:28 am—just minutes before this Court began the

First Day Hearing, Keller Postman filed a motion for a TRO in the MDL court seeking, among

other things, to enjoin 3M from taking any steps outside of the MDL to enjoin lawsuits against

3M, including to enjoin 3M from providing services to the Debtors.[11]  Less than two hours later,

at 10:50 am central, the MDL court *sua sponte* ordered 3M to respond to the Keller Postman TRO

motion by 2:00 pm that same day.[12]  These accelerated proceedings outside of this Court called

upon the resources of not only 3M, but also the Debtors who had to monitor and assess the motion

and response and their impact on the Debtors' reorganization efforts.  In the case of the Keller

Postman TRO motion, for example, the four-hour response time overlapped with and elapsed at

the same time as the Debtors were participating in the First Day Hearing before this Court.

    **B.**    **The Debtors Nonetheless Consensually Resolved The TRO Motion Based On Certain Law Firms' Assurances That There Was No Imminent Risk Of Harm.**

    6.    <u>July 27, 2022</u>. Before the TRO hearing began, lawyers for MDL Co-Lead Plaintiffs'

---

[8]    JPML Dkt. 1771, attached to this Brief as **Exhibit 3**.

[9]    7/27/2022 AM Hr'g Tr. attached to this Brief as **Exhibit 4** at 99:10.

[10]    *See In re Aearo Technologies LLC, et al.* Case No. 22-02890-JJG, Dkt. No. 173.

[11]    MDL Dkt. 3332, attached to this Brief as **Exhibit 5**.

[12]    MDL Dkt. 3333, attached to this Brief as **Exhibit 6**.

Counsel (the law firms of Aylstock, Witkin, Kreis & Overholtz, LLC and Seeger Weiss) strenuously objected to the TRO motion. They argued there was "no irreparable harm if the [TRO] relief [was] not granted," vouching that "[t]here is nothing imminent or potentially cataclysmic on the immediate horizon,"[13] and promising that "no harm will befall the Debtor" until a preliminary injunction hearing before an injunction was entered.[14]

7.      During the hearing, the Debtors raised concerns about the Keller Postman filings and the prospect of additional actions or motions that could impede the reorganization effort and impair this Court's jurisdiction. In response, counsel representing the Aylstock law firm assured the Court and the Debtors that his client was "not going to file anything," and was "not going to run into another court" before this Court could hold the preliminary injunction hearing, promising "that's not how we operate."[15]

> MR. PFISTER: I'm happy to explain what's really going on. I think they're dancing around the issue. But they're not concerned that we're going to file anything; we're not going to file anything. They're trying to offer up a transcript of a hearing this morning in front of the MDL judge. . . And, you know, to be clear when we agree to postpone things for three weeks we're not going to run into another court. That's not -- you know, that's not how we operate. But the offer that we made addresses their issues.[16]

8.      In reliance on these representations and with specific reference to the colloquy at the hearing, the Debtors agreed to (and the Court approved) a consensual resolution to the TRO motion,[17] to avoid irreparable harm before the August 15, 2022 preliminary injunction hearing.

---

[13]   Dkt. No. 16 at ¶ 10.

[14]   Dkt. No. 19 at ¶ 3.

[15]   Ex. 1 at 85:8; 86:3-5.

[16]   Ex. 1 at 85:5-9; 86:3-6.

[17]   Dkt. No. 78.

But subsequent events—including filings made by Keller Postman and other MDL plaintiffs' law firms—have crystallized the need for an injunction.

> **C.    In The 14 Days Following The First Day Hearing, Substantial Events Have Threatened Debtor's Reorganization Efforts And This Court's Jurisdiction.**

9.    Contrary to the representations made at the TRO hearing, certain plaintiffs' law firms, including Keller Postman and MDL Lead Plaintiffs' law firms, Aylstock and Quinn Emmanuel, have taken drastic and unprecedented steps that were targeted to interfere with the jurisdiction of this Court and threatened to irreparably upend the Debtors' restructuring efforts. These actions were complemented by MDL court orders that risked further disruption.

10.    <u>July 28, 2022</u>.  At the First Day Hearing, Keller Postman made clear it had no intention of withdrawing its MDL TRO motion, despite the representation from Aylstock's counsel that he would request Keller Postman do so.[18]  On July 28, 2022, the MDL court denied Keller Postman's TRO motion, stating, "[g]iven that there is presently no automatic stay in place as to 3M Company and the bankruptcy court's decision on whether the automatic stay will apply to 3M Company will not be made until August 18 or later, as well as the fact that the parties have stipulated to continuing Wave 3 discovery deadlines within the MDL, the Court finds that Plaintiff has failed to show irreparable harm absent a seven-day TRO."[19]

11.    <u>July 29, 2022</u>.  The next day, on July 29, 2022, Keller Postman filed another transfer notice with the JPML, this one seeking to transfer this Adversary Proceeding to the MDL.[20] Meanwhile, the parties submitted to the MDL court a proposed pause on certain discovery matters

---

[18]    *See* Ex. 1 at 101:4-9 ("I am not going to pull those filings. I think the motion is correct and righteous on behalf of my clients and that Judge Rodgers has jurisdiction to decide it . . . I am not going to voluntarily pull it down.").

[19]    MDL Dkt. 3343 at 2, attached to this Brief as **Exhibit 7**.

[20]    JPML Dkt. 1774, attached to this Brief as **Exhibit 8**.

that resulted from the consensual TRO resolution, which was based in the "colloquy" at the hearing, including Aylstock's representations.[21]

12.    August 2, 2022.  On August 2, 2022, the MDL court *sua sponte* issued an order regarding the Suggestion of Bankruptcy Notice filing, stating that "[t]here is presently no stay as to 3M Company."[22] On that same day, Keller Postman filed another tag along notice with the JPML, seeking to transfer the Bankruptcy Cases and listing parties more specifically.[23]

13.    August 3, 2022.  At 2:00 pm the next day, August 3, 2022, Keller Postman emailed Debtors' counsel, notifying them it would "renew" its TRO motion, which the MDL court had already denied.[24]  Two hours later, at 4:04 pm Keller Postman filed in the MDL court a motion for a preliminary injunction, seeking to enjoin "3M from (i) relitigating matters in Bankruptcy Court that this Court has already adjudicated and (ii) supporting an injunction against any Plaintiffs from litigating CAEv2 matters against 3M in this Court or following a remand for trial."[25]  As explained in the Debtors' August 9, 2022 supplement to its motion to enforce, the Keller Postman MDL motion violated the automatic stay by, among other things, seeking to enjoin a party from performing obligations under Aearo's executory contracts and from performing services for Aearo that are critical to its reorganization efforts.[26]

14.    Rather than asking for for reconsideration of the MDL court's denial of its TRO motion, Keller Postman instead simply stated that its new motion offered a "more complete"

---

[21]    MDL Dkt. 3359, attached to this Brief as **Exhibit 9**.

[22]    MDL Dkt. 3356 at n.1, attached to this Brief as **Exhibit 10**.

[23]    JPML Dkt. 1778, attached to this Brief as **Exhibit 11**.

[24]    Email from A. Barriere to Counsel for Debtors and 3M, attached to this Brief as **Exhibit 12**.

[25]    MDL Dkt. 3358-1, attached to this Brief as **Exhibit 13**.

[26]    *In re Aearo Technologies LLC, et al.*, Case No. 22-02890-JJG, Dkt. No. 299.

argument because its first TRO motion was "hurried."[27]   Keller Postman asked for expedited briefing, seeking a response date of August 10, and a hearing date of August 12.

15.    At 6:38 pm on that same day, August 3, the MDL court entered a briefing schedule that was even more expedited than requested by Keller Postman (making opposition briefs due August 9, instead of August 10); that provided for a reply brief (which Keller Postman had not requested and is not allowed as a matter of right under the Local Rules); and that set a hearing date of August 11 (which was also sooner than requested by Keller Postman and still before the August 15, 2022 preliminary injunction hearing scheduled before this Court).[28]   The MDL court's order setting the briefing and hearing dates did not refer to the previous denial of Keller Postman's TRO motion or question why the renewed motion was procedurally proper.   (As explained in 3M's August 9, 2022 response filed in the MDL, the Keller MDL preliminary injunction motion is procedurally improper and substantively wrong.)[29]

16.    <u>August 4, 2022</u>. The next day, August 4, 2022, at 10:30 pm, MDL Plaintiff Executive Committee law firm, Quinn Emanuel, filed another motion in the MDL court, this time seeking an advisory ruling regarding whether 3M had waived or was estopped from raising successor liability defenses.[30]   In its brief, Quinn Emanuel invited the MDL to accept its non-ripe waiver and estoppel arguments and preemptively endorse its stated plan to dismiss the Debtors from the MDL complaints and proceed solely against 3M—a transparent but misplaced attempt to

---

[27]   Ex. 13 at 4.

[28]   MDL Dkt. 3359, attached to this Brief as **<u>Exhibit 14</u>**.

[29]   MDL Dkt. 3370, attached to this Brief as **<u>Exhibit 15</u>**.

[30]   MDL Dkt. 3361, attached to this Brief as **<u>Exhibit 16</u>**.

hinder the Debtors' motion to enjoin or stay litigation against 3M.[31]

17.    In support of the motion, Quinn Emanuel submitted an eight-page declaration from Jennifer Hoekstra, a partner at Aylstock—the same firm whose counsel had represented to this Court:  "we're not going to file anything . . . to be clear when we agree to postpone things for three weeks we're not going to run into another court. That's not -- you know, that's not how we operate."[32]

18.    Quinn Emanuel, like Keller Postman, moved to have its motion briefed and heard by August 11, 2022, one week after filing, and also asked to "join" in the August 11 hearing that the MDL court already set on Keller Postman's MDL preliminary injunction motion.[33]

19.    August 5, 2022. The next day, on August 5, 2022 at 2:11 pm, the MDL court granted Quinn Emanuel's request for expedited briefing and to join the August 11, 2022 hearing.[34]  And, although not requested in the Motion, the MDL court also *sua sponte* required 3M to:

> [A]ddress the successor liability issue raised in Cupit's motion, as well as the extent to which the recent indemnification agreement bears on 3M's successor liability. More specifically, 3M's response must outline the terms of its purchase of Aearo in 2008, including assumption of liabilities, if any, and also the reported 2010 transfer to 3M of "the component of [Aearo's] business responsible for the significant majority of its earplug sales."[35]

20.    August 9, 2022:  On August 9, 2022, after a turn-around time of five and three days,

---

[31]  Among other things, the Quinn Emanuel Motion seeks a non-bankruptcy court determination directly bearing on the merits of successor liability claims against 3M, which are property of the estate.  *See Emoral v. Diacetyl (In re Emoral Inc.)*, 740 F.3d 875, 880 (3d Cir. 2014).  Successor liability issues, if any, should be addressed in the bankruptcy court, and the Debtors reserve all rights to address automatic stay issues raised by the the Quinn Emanuel motion.

[32]  MDL Dkt. 3361-1, attached to this Brief as **Exhibit 17**; Ex. 1 at 85:5-9; 86:3-6.

[33]  Ex. 16.

[34]  MDL Dkt. 3364 at 1, attached to this Brief as **Exhibit 18**.

[35]  *Id.*

respectively, 3M filed in the MDL its responses to the Keller Postman and Quinn Emanuel Motions.  3M explained that the Quinn Emanuel Motion should be denied as a procedurally improper request for an advisory opinion, that it is legally untenable under doctrines of waiver and estoppel, and that it seeks to have the MDL court adjudicate issues that squarely fall under this Court's jurisdiction.[36] And 3M demonstrated that the Keller Postman PI Motion is likewise legally meritless because it misapprehends the law and the foundational underpinnings of the Bankruptcy Code, represents an improper effort to preempt this Court's upcoming hearing, and seeks to deprive 3M of its right to participate in these bankruptcy cases.[37]

21.    August 11, 2022:  Just hours before this filing, the MDL court held a hearing on the Keller Postman and Quinn Emanuel motions.   During that hearing, Aylstock (whose attorney had assured this Court that Aylstock was was "not going to run into another court" because "that's not how we operate"), exclaimed that he "absolutely endorse[d]" and joined in the the Keller Postman and Quinn Emanuel motions.

\*      \*      \*

22.    In sum, as of this filing—and less than four days before this Court's preliminary injunction hearing—the Debtors and 3M have grappled with substantial motion practice with responses due on an expedited time frame and purposely set for hearing prior to August 15, 2022. These events, intentionally or otherwise, have threatened this Court's jurisdiction, risked impeding successful restructuring efforts, and diverted the resources of the Debtors as they prepare for the August 15, 2022 hearing on the "most important issue in this case."

23.    This Court has the authority to "carry out" the provisions of the Bankruptcy Code

---

[36]    See MDL Dkt. 3372, attached to this Brief as **Exhibit 19**.

[37]    Ex. 15.

and its "inherent power" "to protect its jurisdiction" and "under [its] general equity powers and in the efficient management of the dockets to grant relief," including issuing "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a); 28 U.S.C. § 1334; *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 376 (2007); *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-03 (4th Cir. 1986); *In re Klarchek*, 508 B.R. 386, 393 n.3 (Bankr. N.D. Ill. 2014) (citing 11 U.S.C. § 105(a) and *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir. 1994)).   The Court should at a minimum promptly issue a preliminary injunction and/or confirm the application of the automatic stay, as well as enter any additional relief it deems appropriate in light of the events and circumstances described above.

## II.    THE EVIDENCE IN THIS CASE FITS SQUARELY WITHIN THE WELL-ESTABLISHED LEGAL FRAMEWORK FOR STAYING OR ENJOINING LITIGATION AGAINST NON-DEBTORS.

24.    The preliminary injunction motion is about protecting the Bankruptcy Court's jurisdiction and ensuring that the Debtors can reorganize effectively using the tools available under chapter 11.  As shown above, the absence of a stay or injunction has led to multiple distractions and continued incurrence of fees and expenses *all outside of this Court's jurisdiction*.  This is a textbook case for the Court to exercise its statutory and inherent powers to control these distractions, maximize value of the estate, resolve claims, and facilitate an efficient, expeditious, an equitable resolution for all interested parties.

### A.    The Section 105 Preliminary Injunction And Section 362 Automatic Stay Factors Overlap In Many Respects As Applied To Non-Debtors.

25.    There are two paths this Court may employ to achieve these restructuring goals: the the preliminary injunction and the automatic stay.

26.    The Debtors' opening motion explained the legal basis for the Court enjoin litigation 3M under Section 105, as well as to find the automatic stay extends under Section 362.

*See Debtors' Brief in Support of Motion for Declaratory and Injunctive Relief* [Dkt. No. 2] (the "**Motion**").

27.    *First*, Section 105(a) empowers this Court to enjoin litigation against non-debtors. In particular, the Seventh Circuit has adopted a modified three-prong standard to assess whether to issue a preliminary injunction under Section 105, looking to whether: (1) allowing third-party litigation would "'defeat or impair' the bankruptcy court's 'jurisdiction over the case before it'"; (2) there is a likelihood of success on the merits, which means a likelihood of a successful reorganization; and (3) the injunction would serve the public interest. Mot. at 33. As detailed in the Debtors' opening brief, the requested injunction satisfies all three prongs. *See* Mot. at 33-43.

28.    *Second,* the automatic stay also may extend to non-Debtors, such as 3M. The Debtors appreciate that this Court and other courts have addressed non-debtor stay issues under Section 105. However, for clarification purposes, the automatic stay applies to actions against debtors and actions to control the property of the estate. 11 U.S.C. §§ 362(a)(1), 362(a)(3). As explained in the Debtors opening brief, the Seventh Circuit has confirmed that the automatic stay applies to a non-debtors in certain circumstances. *See* Mot. at 24.

29.    As a practical matter, Sections 105 and 362 have many overlapping parts and (as the Court suggested) may be "one and the same largely," such that "if you get one, you get the other."[38] For example, the "defeat or impair" prong of the Section 105 test mirrors factors supporting arguments to extend the stay under 362(a): Defeating or impairing jurisdiction is precisely what happens if insurance proceeds are depleted or claims are allowed to be litigated when debtors are not present because of the stay.[39]

---

[38]    Ex. 4 at 118:1-28; Ex. 1 at 108:21-22.

[39]    Certain plaintiffs' lawyers have suggested that the Debtors may not satisfy the identity-of-interests or intertwining
                                                                                                    (Continued)

30.     Similarly, under both Section 105 and Section 362, a showing of identity of interests or inextricably interlinked claims are core factors to the stay and injunction analysis.  As the Court recognized, "the intertwining of the debtors and 3M" is "a big deal" because it would bolster the Debtors' showing under both Section 105(a) and Section 362(a).[40]   The Debtors' opening motion addressed these factors.  *See In re Aearo Technologies LLC, et al.* Case No. 22-02890-JJG, Dkt. No. 2 at 24-29; 33-36.

31.     And Aearo's contractual obligations to indemnify 3M for all Combat-Arms tort liabilities likewise support a stay and injunction under Sections 105 and 362.  *In re W.R. Grace & Co.*, 2004 WL 954772, at \*4 (Bankr. D. Del. Apr. 29, 2004) (applying automatic stay to litigation between two non-debtor parties where one of the parties was entitled to contractual indemnity from the debtor and amending preliminary injunction order to include such action because there was a "close[] identity between the Debtors and the third-party," and a "finding against Debtors . . . will implicate Debtors' indemnification obligation.").[41]

---

claims factors here because 3M may be independently or directly liable for some claims.  But this is not the test.  There is no requirement that the liability and theories against both debtors and the non-debtor be 100% coterminous.  *See In re USA Gymnastics*, 19-50075 (Bankr. S.D. Ind. Apr. 22, 2019) [Dkt. 71] (staying litigation against non-debtor defendants under Section 105, notwithstanding argument that there were "independent and unrelated" claims against the non-debtor (*see id.* at Dkt. 50, Objection To Motion For Preliminary Injunction); *In re Caesars Ent. Operating Co., Inc*., 561 B.R. 441, 452 (Bankr. N.D. Ill. 2016) (granting preliminary injunction notwithstanding creditors' argument that they had independent, contract-based claims and that proposed restructuring support agreement "cannot serve as the basis for a successful reorganization," noting that "[w]hatever merit the guaranty creditors' criticisms of the [restructuring support agreement] may have, they do not suggest a successful reorganization is less than likely"); *In re LTL Management, LLC*, 638 B.R. 291, 308 (Bankr. D.N.J. 2022) (extending automatic stay to non-debtor Johnson & Johnson, noting that "even assuming direct liability exists, the analysis for whether an extension of the automatic stay is warranted based on 'unusual circumstances' remains unaffected.").

[40]   Ex. 4 at 114:5-11; 118:4-8.

[41]   *See also Kuehn v. Sage EcoEnterprises, LLC*, 2021 WL 3883118, at \*4 (W.D.N.C. Aug. 30, 2021) ("Claims against a non-debtor are so intimately intertwined when there is a suit against a non-debtor who is entitled to absolute indemnity from the debtor for any judgment entered. Put another way, the non-debtor defendant must have such an identity with the debtor that suing the non-debtor is the functional equivalent of suing the debtor."); *Edwards v. McElliotts Trucking,* LLC, 2017 WL 5559921, at \*3 (S.D. W. Va. Nov. 17, 2017) (finding that indemnification arrangement between the debtor and non-debtor defendants made action against non-debtor defendants subject to the automatic stay despite direct claims against the non-debtor).

32.    In light of the overlap between 362(a) and 105(a) factors, and, as reflected in the Court's comments, the question of whether an order is a "stay" or an "injunction" may be largely academic.  In this circumstance, the Court can and should grant the requested relief under these two related but separate code provisions.

**B.    The Evidence Will Show That The Court Can And Should Grant Relief Under Section 105 And Section 362.**

33.    The Debtors look forward to providing the Court with an evidentiary record that unquestionably satisfies the standard for obtaining the injunctive relief necessary to stay continued litigation against 3M.

34.    Taking to heart the Court's instruction that testimony will not be through a "piece of paper," a number of witnesses with personal knowledge and foundation will testify live to the facts that fit within the legal framework discussed above and overwhelmingly support the issuance of a preliminary injunction or application of the automatic stay to 3M (or both).  These witnesses will include:

- John Castellano:  Mr. Castellano is Aearo's Chief Restructuring Officer, who will be prepared to testify regarding the role of chapter 11 in addressing unsustainable tort liabilities and risks to the Debtors if litigation continues against 3M, including depletion of resources.

- Brian Myers:  Mr. Myers is a former Aearo employee who is now the Business Director of Personal Safety at 3M.  Mr. Myers was personally involved in the development of the Combat Arms earplugs, and will provide testimony demonstrating that 3M's liability is premised on, and in inextricably intertwined with, the Debtors' alleged conduct and liability arising from that conduct.

- Christopher Sullivan:  Mr. Sullivan is 3M's Vice President of Insurance.  He will describe the insurance policies shared between Aearo and 3M and explain how continued litigation against 3M risks depletion of those policies.

- Jeffrey Stein: Mr. Stein is an Aearo Disinterested Director who has had broad decision-making authority.  He will explain the negotiation and execution of the Funding and Indemnification Agreements that are core components of these proceedings.

15

## **CONCLUSION**

35.     For these reasons (as well as those explained in their opening brief), after the Court considers the evidence and argument at the forthcoming preliminary injunction hearing, the Debtors respectfully request the Court enter an order granting a preliminary injunction and/or extending the automatic stay and enjoining litigation against 3M related to Combat Arms tort claim.

## **NOTICE**

36.     The Debtors will provide notice of this Brief to the following parties or their respective counsel:  (a) the United States Trustee for Region 10, Attn: Ronald Moore; (b) the Top Counsel List;[42] (c) counsel for non-debtor 3M; (d) the United States Attorney's Office for the Southern District of Indiana; (e) the Internal Revenue Service; (f) the office of the attorneys general for the states in which the Debtors operate or face Tort Claims;[43] (g) the United States Department of Veterans Affairs; (h) the United States Department of Defense; (i) the Securities and Exchange Commission; (j) counsel for Keller Postman; (k) counsel for Aylstock, Keller Postman, and the other lawyers listed on Exhibit C to the Motion; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this Brief and any order entered hereon will be served in accordance with Local Rule B-9013-3(d). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

---

[42]     As defined in the the Debtors' creditor matrix motion [*In re Aearo Technologies LLC, et al.*, Case No. 22-02890-JJG, Dkt. No. 17] (the "Creditor Matrix Motion").

[43]     As defined in the Creditor Matrix Motion.

WHEREFORE, the Debtors respectfully submit this Brief in support of the Motion and request the Court enter an order sustaining the Motion and granting such other relief to which the Debtors may be entitled.

Indianapolis, Indiana
Dated:  August 11, 2022

/s/ Jeffrey A. Hokanson
Jeffrey A. Hokanson (Ind. Atty. No. 14579-49)
John C. Cannizzaro (Ohio Atty. No. 85161)
Connor Skelly (Ind. Atty. No. 35365-06) (*pro hac vice*)
**ICE MILLER LLP**
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone:     (317) 236-2100
Facsimile:      (317) 236-2219
Email:           jeff.hokanson@icemiller.com
                     john.cannizzaro@icemiller.com
                     connor.skelly@icemiller.com

Edward O. Sassower, P.C. (*pro hac vice*)
Emily Geier (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           edward.sassower@kirkland.com
                     emily.geier@kirkland.com

Mark McKane, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California  94104
Telephone:     (415) 439-1473
Facsimile:
Email:           mark.mckane@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice*)
David M. Bernick (*pro hac vice*)
Brenton A. Rogers, P.C. (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
Spencer Winters (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           chad.husnick@kirkland.com
                     david.bernick@kirkland.com
                     brogers@kirkland.com
                     renee.smith@kirkland.com
                     spencer.winters@kirkland.com

David I. Horowitz, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 South Flower Street, 37th Floor,
 Los Angeles, California 900714
Telephone:     (213) 680-8374
Facsimile:      (213) 808-8074
Email:           david.horowitz@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*